UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                               :
In re                                          :        Chapter 11 Case No.
                                               :
FINLAY ENTERPRISES, INC., *et al.*,            :        09-14873 (JMP)
                                               :
                    Debtors[1].                :        (Jointly Administered)
                                               :
------------------------------------------------------------x

### ORDER APPROVING AGENCY AGREEMENT, STORE CLOSING SALES AND RELATED RELIEF

Upon the Debtors' Motion Pursuant To Sections 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 6004 and 6006 for (I) Approval of Procedures in Connection With the Sale of All or Substantially All of the Debtors' Assets, (II) Authorization to Enter Into Stalking Horse Agreement in Connection Therewith, (III) Approval of the Payment of Stalking Horse Protections and (IV) the Setting of Related Auction and Hearing Dates, (the "Motion")[2]; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to (i) the Office of the United States Trustee for the Southern District of New York, (ii) the attorneys for General Electric Capital Corporation ("GECC"), as

---

[1] The Debtors in these cases, along with the last four digits of the federal tax identification number for the Debtors are the following: Finlay Enterprises, Inc. (2802), Finlay Fine Jewelry Corporation (7757), Finlay Merchandising & Buying LLC (4597), Finlay Jewelry, Inc. (2931), eFinlay, Inc. (8315), Carlyle & Co. Jewelers LLC (4460), Park Promenade, LLC (5397) and L. Congress, Inc. (6150).

[2] Capitalized terms used by not defined herein shall have the meanings given to them in the Agency Agreement, the Consulting Agreement or Consignment Agreement (each as defined below), as the case may be.

agent under that certain Fourth Amended and Restated Credit Agreement dated as of November 9, 2007, (iii) the attorneys for Wilmington Trust FSB ("Wilmington Trust"), as successor trustee under that certain second lien indenture dated as of November 26, 2008, (iv) the attorneys for HSBC Bank USA, N.A. ("HSBC"), as trustee under that certain third lien indenture dated as of November 26, 2008, (v) the attorneys for the official committee of unsecured creditors appointed in these chapter 11 cases, (vi) the U.S. Securities and Exchange Commission, (vii) all parties that have either expressed an interest in purchasing the Assets or who the Debtors believe may express an interest in purchasing such Assets (the "Interested Parties"), (viii) all other affected federal and local regulatory and taxing authorities, including the Internal Revenue Service, (ix) all attorney general's offices in the states in which the Debtors do business, and (x) all parties entitled to notice pursuant to this Court's Order Implementing Certain Notice and Case Management Procedures dated August 6, 2009, and it appearing that no other or further notice need be provided; and the Court having entered an order dated August 20, 2009 approving the bidding procedures attached thereto; and an auction having been held on September 23, 2009 (the "Auction"); and Gordon Brothers having been the successful bidder at the Auction; and the Debtors and Gordon Brothers having agreed to (x) the terms of the sale in accordance with that certain Agency Agreement, dated September 24, 2009, by and between Gordon Brothers Retail Partners LLC ("Gordon Brothers"), as agent (the "Agent") and Finlay Fine Jewelry Corporation a copy of which is attached hereto as Exhibit A (the "Agency Agreement") pursuant to which Agent shall act as the Debtors' exclusive agent for the sale of Merchandise located in the Debtors' forty nine (49) specialty retail store locations set forth on Exhibit 1B to the Agency Agreement, and (y) the Debtors' assumption of the Existing Agreements (as defined below) with respect to merchandise located in the Current Stores; and further hearing having been held on

September 25, 2009 (the "Sale Hearing") to consider the relief requested in the Motion and approval of the Agency Agreement and assumption of the Existing Agreements; and the appearances of all interested parties having been noted in the record of the Sale Hearing; and upon the Affidavit of Arthur E. Reiner Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, sworn to on August 6, 2009, and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore, it is

FOUND AND DETERMINED THAT:

    A.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these cases and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

    B.      The statutory predicates for the relief requested are §§105(a), 363 and 365 of the Bankruptcy Code and Rules 2002, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

    C.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

D. Notice of the Motion and of the Sale Hearing was given in accordance with the directive of the Court and as otherwise required by applicable law, as evidenced by the affidavits of service on file with the Clerk of the Court.

E. The notice of the Motion and of the Sale Hearing was adequate and sufficient under the circumstances. A reasonable opportunity to object or to be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities.

F. As demonstrated by representations of counsel to the Debtors and other parties in interest made at the Sale Hearing, the Debtors have conducted the bidding solicitation and auction process fairly, with adequate opportunity for interested parties to submit Qualified Bids and in compliance with this Court's Order Pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 6004 and 6006 (I) Approving Procedures in Connection With the Sale of All or Substantially All of the Debtors' Assets, (II) Authorizing the Debtors to Enter Into Stalking Horse Agreement in Connection Therewith, (III) Approving the Payment of Stalking Horse Protections, And (IV) Setting Related Auction and Sale Hearing Dates, entered on August 20, 2009.

G. The offer of Gordon Brothers, upon the terms and conditions set forth in the Agency Agreement and the Existing Agreements, including the form and total consideration to be realized by the Debtors pursuant to the Agency Agreement and the Existing Agreements (as defined below), (i) is the highest and best offer received by the Debtors, (ii) is fair and reasonable; and (iii) is in the best interests of the Debtors' estates.

H. Approval of the Sale contemplates (a) assumption of the (i) Consulting Agreement dated as of March 20, 2009, between Finlay Fine Jewelry Corporation and Gordon Brothers as consultant (the "Consultant"), a copy of which is attached hereto as Exhibit B (as

amended by Amendment No. 1 dated as of May 20, 2009, and by the substitution of the revised budget attached thereto, the "Consulting Agreement") and (ii) the Consignment Agreement, made as of April 6, 2009, by and among Debtors and Consultant as "Consignor" (the "Consignment Agreement" and together with the Consulting Agreement, and as modified hereunder, the "Existing Agreements"), a copy of which is attached hereto as Exhibit C, and (b) continuation of the store closings sales (the "Store Closing Sales" and collectively with the Sale, the "Sales") at the Debtors' stores identified on Exhibit A to the Consulting Agreement (the "Current Stores" and collectively, with the Stores, the "Retail Stores").

I. The transactions contemplated by the Agency Agreement do not include the sale or lease of personally identifiable information, as defined in section 101(41A) of the Bankruptcy Code ("Personally Identifiable Information") (or assets containing Personally Identifiable Information).

J. The Debtors (i) have full corporate power and authority to execute and deliver the Agency Agreement and all other documents contemplated thereby, and the Sale of the Debtors' Merchandise has been duly and validly authorized by all necessary corporate action of the Debtors, (ii) have all of the corporate power and authority necessary to consummate the transactions contemplated by the Agency Agreement and (iii) have taken all corporate action necessary to authorize and approve the Agency Agreement and the consummation of the transactions contemplated thereby. No consents or approvals, other than those expressly provided for in the Agency Agreement, are required for the Debtors to consummate such transactions.

K. The Agency Agreement and the Existing Agreements were negotiated and entered into in good faith, based upon arm's length bargaining, and without collusion or fraud. Neither

5

the Debtors nor Gordon Brothers has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code or cause the application of or implicate Section 363(n) of the Bankruptcy Code to the Agency Agreement or to the consummation of the transactions contemplated thereby.

L. The Debtors were free to deal with any other party interested in liquidating some or all of the Debtors' assets. Gordon Brothers has not violated section 363(n) of the Bankruptcy Code by any action or inaction. Specifically, Gordon Brothers has not acted in a collusive manner with any person and was not controlled by any agreement among bidders. Gordon Brothers is not an "insider" as that term is defined in section 101(31) of the Bankruptcy Code. No common identity of directors or controlling stockholders exists between Gordon Brothers and the Debtors.

Now, therefore, it is hereby

ORDERED, ADJUDGED AND DECREED THAT:

1. The Motion is granted to the extent provided herein. All objections to the Motion that have not been withdrawn, waived, settled, or specifically addressed in this Order, and all reservations of rights included in such objections, are overruled in all respects on the merits and denied.

2. The Debtors are hereby authorized and empowered to enter into the Agency Agreement, and the Agency Agreement is hereby approved in its entirety and is incorporated herein by reference. All amounts payable to the Agent under the Agency Agreement shall be payable to the Agent without the need for any application of the Agent therefor or a further order of the Court.

3. Pursuant to section 365 of the Bankruptcy Code, assumption by the Debtors of the Existing Agreements is hereby directed, authorized and approved as a valid exercise of the Debtors' business judgment and all amounts payable to the Consultant under the Existing Agreements shall be payable to the Consultant without the need for any application of the Consultant therefor or a further order of the Court.

4. The Debtors and the Agent are hereby authorized, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to conduct the Sale at the Stores in accordance with the Agency Agreement and the Sale Guidelines, which Sale Guidelines are hereby approved in the form attached to this Order.

5. The Debtors and the Consultant are hereby authorized, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to conduct the Store Closing Sales at the Current Stores in accordance with the Existing Agreements, provided, however, notwithstanding anything to the contrary in the Existing Agreements, that such sales may hereinafter be conducted as GOB Sales (as defined below) in accordance with the Sales Guidelines, and that the Sale Termination Date (as defined in the Consulting Agreement) shall be December 31, 2009, unless such date is extended by mutual agreement of the Debtors (in consultation with the Lenders and the Creditors Committee) and the Consultant.

6. Except as otherwise provided in the Agency Agreement, pursuant to Section 363(f) of the Bankruptcy Code, the assets being sold pursuant to the Agency Agreement shall be sold free and clear of any and all mortgages, security interests, conditional sales or title retention agreements, pledges, hypothecations, liens, judgments, encumbrances or claims of any kind or nature (including, without limitation, any and all "claims" as defined in section 101(5) of the Bankruptcy Code), including, without limitation, the liens and security interests of GECC, as

agent for lenders (in such capacity, the "Senior Lender Agent") that are party to that certain Fourth Amended and Restated Credit Agreement, dated as of November 9, 2007, with Debtors, as the same may have been amended from time to time, Wilmington Trust, as successor trustee under that certain second lien indenture dated as of November 26, 2008, and HSBC, as trustee under that certain third lien indenture dated as of November 26, 2008 (together with the Senior Lender Agent, the "Lenders"), whether arising by agreement, any statute or otherwise and whether arising before, on or after the date on which this chapter 11 case was commenced (collectively, the "Liens"), with such Liens to attach to the Guaranteed Amount, the Recovery Amount and any other amounts payable to the Debtors under the Agency Agreement (collectively, the "Transaction Proceeds") with the same validity, force and effect as the same had with respect to the assets at issue, subject to any and all defenses, claims and/or counterclaims or setoffs the Debtors may possess.

7. All of the transactions contemplated by the Agency Agreement shall be protected by section 363(m) of the Bankruptcy Code in the event that this Order is reversed or modified on appeal. The transactions contemplated by the Agency Agreement are not subject to avoidance pursuant to section 363(n) of the Bankruptcy Code.

8. Unless otherwise ordered by the Court, all newspapers and other advertising media in which the Sales may be advertised and all landlords are directed to accept this Order as binding authority so as to authorize the Debtors and Gordon Brothers to consummate the Agency Agreement and the Existing Agreements and to conduct the Sales at the Retail Stores, including, without limitation, conducting and advertising of the Sales (at the contractual rates charged to the Debtors prior to the Petition Date) in accordance with the Agency Agreement, the Existing

Agreements, the Sale Guidelines, and this Order; and no further approval, license or permits of any governmental authority shall be required.

9. Except as expressly provided herein or in the Sales Guidelines, and except as to any governmental unit of any state in which a Retail Store is located (referred to herein as a "State") (as to which this paragraph shall not apply) or any other governmental unit when enforcing applicable tax, labor, employment, environmental and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "General Laws"), no person or entity, including but not limited to any landlord or any federal governmental unit or any city, town, county, parish, or municipal or other local (referred to herein as "Local") governmental unit (as defined in Section 101(27) of the Bankruptcy Code), that was (i) served with a copy of the Motion or (ii) served with a copy of this Order that does not object pursuant to the provisions of this Order, shall in contravention of this Order take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Sales, or the advertising and promotion (including the use of signwalkers) of the Sales, and all such parties and persons of every nature and description, including landlords and utility companies and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, or otherwise impeding the conduct of the Sales and/or (b) instituting any action or proceeding in any court or administrative body seeking an order or judgment against, among others, the Debtors, Gordon Brothers, or the Debtors' landlords for the Retail Stores, that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Sales as provided for herein and/or seek to recover damages for breach(es) of covenants or provisions in any lease or sublease based upon any relief authorized herein.

10. The Debtors and Gordon Brothers are hereby authorized to take such actions necessary and appropriate to implement the Agency Agreement and Existing Agreements and to conduct the Sales without necessity of further order of this Court as provided by the Agency Agreement and Existing Agreements, including, but not limited to, (a) the sale of Assurant Service Contracts as provided in Section 8.8 of the Agency Agreement, and (b) advertising the Sales through the posting of signs (including the use of exterior banners) at (i) non-enclosed mall Retail Stores, and (ii) enclosed mall Retail Stores to the extent the applicable Retail Store entrance does not require entry into the enclosed mall common area, use of signwalkers and street signage, in accordance with the Agency Agreement and as otherwise provided in the Sale Guidelines.

11. Provided that the Sales are conducted in accordance with the terms of this Order, the Sale Guidelines, the Agency Agreement, and the Existing Agreements, and in light of the provisions in the laws of many governmental units that exempt court-ordered sales from their provisions, the Debtors and Gordon Brothers shall be presumed to be in compliance with any GOB Laws (as defined herein) and, subject to paragraphs 15 through 19, are authorized to conduct the Sales in accordance with the terms of this Order, the Sale Guidelines the Agency Agreement and the Existing Agreements without the necessity of compliance with any such GOB Laws. For purposes of this Order, GOB Laws shall mean any federal, state or local statute or ordinance or licensing requirement solely directed at regulating store closing, "going out of business," liquidation, bankruptcy, auction or similar sales ("GOB Sales"), including laws restricting safe, professional and non-deceptive, customary advertising of GOB Sales, such as signs, banners, posting of signage, and use of sign walkers, and including ordinances establishing licensing or permitting requirements, waiting periods, time limits or bulk sale

restrictions that would otherwise apply to the Sale ("GOB Laws").  For the avoidance of doubt, the Sales shall not be exempt from, and the Agent shall not be entitled to a presumption of compliance with laws other than GOB Laws, including General Laws.

12. Subject to the provisions of paragraphs 11 and 15, Gordon Brothers' use, in conformity with the Sale Guidelines and this Order, of (i) signwalkers; (ii) interior store signage and banners; and (iii) exterior banners ("Banner and Signwalker Advertising"), is authorized notwithstanding any lease provisions which purport to regulate, prohibit, restrict, or in any way limit such activity so long as such activity is undertaken by Gordon Brothers in a safe, professional and non-deceptive manner.  Any person (including without limitation any landlord but excluding any governmental unit), that, after having received a copy of this Order, and after having been specifically advised in writing of the provisions of this Order, continues to interfere with Banner and Signwalker Advertising undertaken in compliance with this Order, shall be liable to Gordon Brothers and/or Debtors and affected landlord(s) for any and all damages resulting from such continued interference.

13. Except as otherwise provided in paragraphs 15 through 19, this Court shall retain exclusive jurisdiction to resolve any disputes regarding this Order and the actions authorized hereunder brought by or against any person, including (i) any claim or issue relating to any efforts to prohibit, restrict or in any way limit Banner and Signwalker Advertising, including with respect to any allegations that such advertising is not being conducted in a safe, professional and non-deceptive manner, (ii) any claim of the Debtors, the landlords and/or the Agent for protection from interference with the Sales and (iii) any other disputes related to the Sales or arising under the Agency Agreement and the Existing Agreements or the implementation thereof.  Except as provided in paragraph 15, no actions shall be taken by any

person against the Debtors, Gordon Brothers, the landlords or the Sales until this Court has resolved such dispute. This Court shall hear any such disputes on an expedited basis, as may be appropriate under the circumstances.

14. Except as expressly provided in the Agency Agreement, and notwithstanding anything to the contrary in the Existing Agreements, the Sales shall be conducted by the Debtors and the Agent notwithstanding any restrictive provision of any lease, sublease or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Sales, the rejection of leases, abandonment of assets or "going dark" provisions; <u>provided</u>, <u>however</u>, that nothing in this Order shall impact any objection that any of the Debtors' landlords may have to assumption, assignment or rejection of their respective lease or to any proposed cure amount or rejection damages claim in association with such assumption, assignment or rejection. Gordon Brothers and landlords of the Retail Stores are authorized to enter into agreements between themselves modifying the Sale Guidelines without further order of the Court, and such agreements shall be binding as among Gordon Brothers and any such landlords.

15. Nothing in this Order shall be deemed to bar any governmental unit from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtors' or Gordon Brothers' right to assert that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Order or otherwise, pursuant to paragraph 11.

16. To the extent reasonably practicable, each applicable governmental unit shall provide the Debtors and Gordon Brothers and any affected landlord with reasonable notice and opportunity to cure any alleged violation of any applicable law or regulation prior to instituting formal administrative or judicial proceedings; <u>provided</u>, <u>however</u>, cessation of alleged unlawful

conduct after notice shall not, in and of itself, render moot court action by any State, including the imposition of injunctive relief, even if the Debtors or Gordon Brothers has ceased the alleged unlawful conduct. No party waives any rights to argue any position with respect to whether the conduct was in compliance with this Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code. Nothing in this Order shall be deemed to have made any rulings on any such issues.

17. The Debtors shall serve copies of this Order within five (5) business days, via first class mail, upon (i) the State Attorney General's offices (upon (x) Chief or Director of the Consumer Protection Division or Bureau; and (y) Chief or Director of the Bankruptcy Division or Bureau) and State Consumer Protection Agency for each State, and (ii) the Local mayor or similar official representative of each village, town or city, and the county or parish where a Store is located, addressed to the attention of the municipal, city or county attorney, in each case to the consumer protection division.

18. If there is a dispute as to whether the general conduct of the Sales is in accordance with this Order, the Agency Agreement, the Existing Agreements or the Sales Guidelines or would violate a GOB Law and should be limited or barred (a "<u>Reserved Dispute</u>"), resolution of that Reserved Dispute will take place before this Court, as provided in this paragraph. Any time before the fifteenth (15th) day following the service of this Order as provided for in paragraph 17, any governmental unit may assert a Reserved Dispute by sending a notice explaining the nature of the dispute to counsel for the Debtor, Gordon Brothers, the Creditors' Committee, the Indenture Trustees and Harbinger. If the Debtor and the governmental unit are unable to resolve the Reserved Dispute within ten (10) days of receipt of the notice, either party may file a motion with the Court requesting resolution of the dispute (a "<u>Dispute Resolution Motion</u>"). Any such

Dispute Resolution Motion shall also be served upon any affected landlord(s). Any issues relating to a Reserved Dispute shall not affect the finality of this Order or limit or interfere with the conduct of the Sale prior to any ruling by this Court on said Reserved Dispute.

19. If such Dispute Resolution Motion is timely filed, the Debtors and/or Gordon Brothers shall be entitled to assert that the provisions of this Order and/or the conduct of the Sales do not violate the GOB Law, or, if they do, that such GOB Law is subject to preemption by the Bankruptcy Code. The governmental unit shall be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the validity of this Order, the requirements of its GOB Laws, or the lack of any preemption of such GOB Laws by the Bankruptcy Code. Nothing in this Order, including the presumption stated in paragraph 11, shall constitute a ruling with respect to any issues to be raised in the Dispute Resolution Motion, including whether the GOB Law is preempted by the Bankruptcy Code, whether the automatic stay applies to any proposed action, or whether sovereign immunity applies to any action relating to a governmental unit.

20. If at any time a dispute arises between the Debtors or Gordon Brothers and a governmental unit as to whether a particular law is a GOB Law and subject to any provisions contained in this Order related to GOB Laws, or whether enforcement of a conceded GOB Law may be preempted, then any party to that dispute may utilize the provisions of paragraphs 18 and 19 by sending a notice to the other party and proceeding thereunder in accordance with those paragraphs. Any determination with respect to whether a particular law is a GOB Law shall be made *de novo* in accordance with the definitions in this Order.

21. Throughout the applicable Sale Terms, Gordon Brothers shall have the right to use the Retail Stores and all related services, furniture, fixtures, equipment and other assets of

Debtors for the purpose of conducting the Sales, in each case solely in accordance with the applicable provisions of the Agency Agreement and the Existing Agreements.

22. Until the applicable Sale Termination Date, Gordon Brothers shall be granted a limited license and right to use the Debtors' trade names, logos and customer lists relating to and used in connection with the operation of the Retail Stores, solely for the purpose of advertising the Sale and the Store Closing Sales in accordance with the applicable terms of the Agency Agreement and Existing Agreements.

23. Except as expressly provided for in the Agency Agreement or the Existing Agreements, nothing in this Order or the Agency Agreement or the Existing Agreements and none of Gordon Brothers' actions taken in respect of the Sale or the Store Closing Sales shall be deemed to constitute an assumption by Gordon Brothers of any of the Debtors' obligations relating to any of the Debtors' employees. Moreover, Gordon Brothers shall not become liable under any collective bargaining or employment agreement or be deemed a joint or successor employer with respect to such employees.

24. Except as set forth in the Agency Agreement, and the Existing Agreements the Debtors and/or Gordon Brothers (as the case may be) are authorized and empowered to transfer assets among the Stores and among the Current Stores (but not among the Stores and Current Stores). Gordon Brothers shall be permitted to include in the Sales as consigned goods the Additional Agent Merchandise in accordance with the terms and provisions of the Agency Agreement and the Existing Agreements. At all times, title to the Additional Agent Merchandise shall remain with Gordon Brothers and the Additional Agent Merchandise and the proceeds thereof, shall not constitute property of the estate of any one or more of the Debtors.

25. With respect to the Current Stores, the Consignment Agreement shall remain in full force and effect. This Order shall be sufficient and conclusive evidence of the validity, perfection, and enforceability of Gordon Brothers' ownership and consignment interests in and superpriority liens upon ("Consignment Interests") any and all Additional Agent Merchandise (including Additional Goods whether consigned under the Agency Agreement or the Consulting Agreement and Consignment Agreement) and proceeds thereof (other than amounts payable to the Debtors with respect thereto) notwithstanding anything to the contrary in any other order of this Court, without the necessity of filing or recording any financing statement or other instrument or document, or taking any other act or giving any other notice, which otherwise may be required under state or federal law, rule or regulation of any jurisdiction to validate or perfect the Consignment Interests, or to entitle Gordon Brothers to the priorities granted herein or therein. The Debtors may execute and Gordon Brothers may file or record financing statements or other instruments to evidence the continuing Consignment Interests, and the Debtors hereby are authorized and directed to execute and file or record any such statements or instruments as Gordon Brothers may request, but no such execution, filing or recordation shall be necessary or required in order to create or perfect such Consignment Interests.

26. The Debtors grant to Gordon Brothers, solely in accordance with the terms of the Agency Agreement pursuant to sections 364(d) and 507 of the Bankruptcy Code of the Bankruptcy Code a valid and perfected first priority security interest and superpriority administrative claim (subject to the subordination provisions set forth below in this paragraph) in and lien upon the Merchandise and the Proceeds to secure all obligations of Debtors under the Agency Agreement; provided, however, that until the payment of the Guaranteed Amount, the Recovery Amount and Expenses due to Merchant under the Agency Agreement, Gordon

Brothers' security interest shall remain junior and subordinate in all respects to the liens, security interests and claims of the Lenders to the extent of the unpaid portion of the Guaranteed Amount, the Recovery Amount and Expenses. Upon entry of this Order and payment of the Initial Guaranty Payment and the issuance of the Guaranty L/C and the Expense L/C, the security interest granted to Gordon Brothers shall be deemed properly perfected without the need for further filings or documentation.

27. The provisions of this Order, the Agency Agreement and the Existing Agreement and any actions taken pursuant hereto or thereto shall survive the entry of any order which may be entered confirming or consummating any plan of reorganization of the Debtors or converting the Debtors' cases from chapter 11 to chapter 7, and the terms and provisions of the Agency Agreement and the Existing Agreements as well as the rights and interests granted pursuant to this Order and the Agency Agreement and the Existing Agreements shall continue in this or any superseding case and shall be binding upon the Debtors, Gordon Brothers and their respective successors and permitted assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code. Any trustee appointed in these cases shall be and hereby is authorized to operate the business of the Debtors to the fullest extent necessary to permit compliance with the terms of this Order and the Agency Agreement and the Existing Agreements, and Gordon Brothers and the trustee shall be and hereby are authorized to perform under the Agency Agreement and Existing Agreements upon the appointment of a trustee without the need for further order of this Court. In the event a chapter 7 trustee determines that it needs further order of this Court in connection with the continued operation of the business, such motion shall be heard on an expedited basis.

28. To the extent that anything contained in this Order conflicts with a provision in the Agency Agreement or the Sale Guidelines, this Order shall govern and control. This Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the implementation of this Order or otherwise arising from or related to the Agency Agreement.

29. Gordon Brothers shall not be liable for any claims against the Debtors, and the Debtors shall not be liable for any claims against Gordon Brothers, in each case, other than as expressly provided for in the Agency Agreement and the Existing Agreements. Gordon Brothers shall have no successor liability whatsoever with respect to any Liens or claims of any nature that may exist against the Debtors.

30. No bulk sale or similar law shall prohibit the Debtors or Gordon Brothers from taking action contemplated by the Agency Agreement.

31. The Debtors, Gordon Brothers and each of their respective officers, employees and agents are hereby authorized to execute such documents and to do such acts as are necessary or desirable to carry out the Sales and effectuate the Agency Agreement, the Existing Agreements and the related actions set forth therein.

32. Notwithstanding Bankruptcy Rules 4001 and 6004, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. In the absence of any person or entity obtaining a stay pending appeal, the Debtors and Gordon Brothers are free to perform under the Agency Agreement and the Existing Agreements at any time, subject to the terms of the Agency Agreement and Existing Agreements.

33. Gordon Brothers is a party in interest and shall have the ability to appear and be heard on all issues related to or otherwise connected to this Agency Agreement, the Existing Agreements and the conduct of the Sale.

34. In resolution of the Objections of the Tax Appraisal District of Bell County, et al. (Docket No. 206), Lewisville Independent School District (Docket No. 203), Arlington ISD, et al. (Docket No. 209), the Local Texas Taxing Authorities (Docket No. 215), the Chatham County Tax Commissioner (Docket No. 229), and Fairfax County, Virginia (objection submitted to the Debtors) (collectively, the "<u>Objecting Tax Authorities</u>"), there shall be set aside by the Debtors, from the proceeds of the sale of any of the Debtors' assets, the amount of $1,801,057.70 in a segregated account as adequate protection for the secured claims of the Objecting Tax Authorities, prior to the distribution of any proceeds to any other creditor. The liens of the Objecting Tax Authorities shall attach to these proceeds to the same extent and with the same priority as the liens (if any) they now hold against the property of the Debtors being sold hereunder. The segregation of such funds shall be on the order of adequate protection and shall constitute neither the allowance of the claims of the Objecting Tax Authorities, nor a cap on the amounts they may be entitled to receive. Furthermore, the claims and liens of the Objecting Tax Authorities shall remain subject to any objections any party in interest would otherwise be entitled to raise as to the priority, validity or extent of such liens. These funds may be distributed upon agreement between the Objecting Tax Authorities and the Debtors, or by subsequent order of the Court, duly noticed to the Objecting Tax Authorities.

Dated: New York, New York
      September 25, 2009

                              *s/ James M. Peck*
                              UNITED STATES BANKRUPTCY JUDGE